**J.T.S., a minor, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3623.**

Court of Appeals of Alaska.

Jan. 31, 1992.

Margi Mock, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Steven D. DeVries, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

J.T.S., a minor who was adjudicated delinquent; appeals from an order of the superior court allowing the Department of Health and Social Services to institutionalize him for up to two years or until his 19th birthday. AS 47.10.080(b)(1). J.T.S. contends that the superior court's order violates Alaska Delinquency Rule 23(d) because institutionalization was not the "least restrictive alternative" available to the court. We remand.

Born in March 1973, J.T.S. was adjudicated a delinquent minor at the age of 15 on June 22, 1988 for committing third-degree criminal mischief (joyriding), AS 11.-46.484(a)(2). After signing a conduct agreement, J.T.S. was released on probation to his father's custody.

Five days later, J.T.S. committed another joyriding. On June 29, 1988—just one week after his delinquency adjudication—the court found that J.T.S. had violated his conduct agreement and sentenced him to McLaughlin Youth Center for 10 days.

J.T.S. was released from McLaughlin on July 8, 1988. Two days later, J.T.S. stole another car; again, he was adjudged in violation of his probation agreement. J.T.S. was returned to McLaughlin, this time for 30 days.

J.T.S. was released from McLaughlin on August 10, 1988. Three weeks later, on September 2, J.T.S. again committed joyriding, this time taking his father's car. J.T.S. was ordered detained in McLaughlin until September 30, but he was soon referred to Alaska Children's Services with a request that he be considered for admission into the Jesse Lee Home.

On September 22, the superior court approved J.T.S.'s admission into Jesse Lee. The conditions of J.T.S.'s probation were modified to include the requirement that he comply with all of the home's rules.

One month later, on October 21, J.T.S.'s probation officer filed a petition to modify or revoke J.T.S.'s probation; J.T.S. had left the Jesse Lee Home without consent the day before. J.T.S. was arraigned on this revocation petition on October 24, 1988, but the petition was held in abeyance for 30 days while J.T.S. was returned to the Jesse Lee Home to see if his behavior would improve.

On December 29, 1988, J.T.S. again violated probation by remaining away from Jesse Lee without consent. A second petition to revoke his probation was again held in abeyance, and ultimately dismissed on March 10, 1989, because J.T.S. did not have any further infractions.

Two weeks after this revocation petition was dismissed, J.T.S. again went AWOL from the Jesse Lee Home. J.T.S. was temporarily placed in McLaughlin, but after a few days, he was released back to Jesse Lee.

Five days later, while still awaiting the disposition hearing on the latest revocation petition, J.T.S. ran away again from the Jesse Lee Home. On May 1, 1989, J.T.S. was sent back to McLaughlin until May 30.

On May 1 and 10, 1989, the Department filed two new delinquency petitions against J.T.S.. These petitions alleged that, during the time J.T.S. was absent from the Jesse Lee Home without authorization, he stole another car and also committed first-degree burglary, AS 11.46.300(a)(1). Both petitions were found true.

The Department told the superior court that only two placement possibilities remained for J.T.S.: McLaughlin Youth Center or the Intensive Treatment Unit operated by Alaska Children's Services. Despite J.T.S.'s history of running away, the Department favored the Intensive Treatment Unit even though that facility posed somewhat of a risk because it was not a closed institution like McLaughlin.[1]

At the same time, Alaska Children's Services filed its evaluation of J.T.S. upon his discharge from the Jesse Lee Home. In this evaluation, the staff at the Jesse Lee Home reported that J.T.S. had had problems with theft, lying, flight behavior, and anger. They did report, however, that J.T.S. had shown improved ability to control his aggressive behavior, due in part to his continued use of medication for Attention Deficit Disorder.

At J.T.S.'s disposition hearing on May 30, 1989, Master William Hitchcock decided to place J.T.S. in McLaughlin. In making this decision, Master Hitchcock examined J.T.S.'s past violations and his history of ignoring authority. Master Hitchcock concluded that J.T.S. was a danger to the property rights of others. He also declared that, given the recent burglary and the most recent joyriding (which would have been a felony if J.T.S. had been an adult), J.T.S.'s pattern of violations was escalating in frequency and severity.

For these reasons, Master Hitchcock concluded that J.T.S.'s stay in Jesse Lee had not helped and that, because of J.T.S.'s running away and continued violations of the law, no treatment alternatives short of institutionalization were consistent with both J.T.S.'s rehabilitation and the protection of the public.

J.T.S. objected to the master's findings. At the disposition hearing before Superior Court Judge Victor D. Carlson, both J.T.S. and the Department concurred in a recommendation for placement in the Intensive Treatment Unit. Nevertheless, Judge Carlson approved Master Hitchcock's recommendation, finding that if J.T.S. could not handle the freedom of the Jesse Lee Home, J.T.S. would also walk away from the Intensive Treatment Unit.

Eleven months later, on April 23, 1990, a McLaughlin review board found that J.T.S. had made significant progress in controlling his impulsive and destructive behavior; the board recommended that J.T.S. be released on probation to his adoptive father. Master Hitchcock released J.T.S. on May 11, 1990.

Ten days later, on May 21, 1990, J.T.S. stole another vehicle. Master Hitchcock recommended that J.T.S. be returned to McLaughlin. This recommendation was approved by Superior Court Judge Peter A. Michalski on July 25, 1990.

J.T.S. now appeals this most recent institutionalization order. He argues that the superior court should have sent him to the Intensive Treatment Unit or back to the Jesse Lee Home rather than returning him to McLaughlin. He points out that no live testimony was taken at the most recent disposition hearing, nor were any reports offered from the McLaughlin staff or from mental health professionals. Instead, the superior court made its determination solely from J.T.S.'s pre-existing record.

■ The record in this case demonstrates good reason to believe that placement of J.T.S. in a setting such as the Jesse Lee Home or the Intensive Treatment Unit might be inadequate to achieve J.T.S.'s rehabilitation or to protect the public. Except for the time J.T.S. has spent in McLaughlin, his offenses have continued

1. The differences between the Intensive Treatment Unit and the Jesse Lee Home are nominal. The Intensive Treatment Unit has a higher staff-to-juvenile ratio, its rules are stricter, and the children's school is located on the campus. But, like the Jesse Lee Home, the Intensive Treatment Unit is not a closed facility.

without significant interruption since June, 1988. Several times, J.T.S. has been released on probation; each time, J.T.S. has committed new offenses. During J.T.S.'s previous placement at the Jesse Lee Home, J.T.S. repeatedly ran away. During his last unauthorized absence from Jesse Lee, J.T.S. engaged in conduct that, were he an adult, would constitute two separate felonies.

■ We conclude, nevertheless, that this case must be remanded to the superior court for reconsideration of J.T.S.'s placement at McLaughlin Youth Center. The law views institutionalization of a minor as the disposition of last resort. Before a minor is institutionalized in a closed facility, Delinquency Rules 11(e) and 23(d) require the superior court to consider the available placement options and affirmatively determine that less restrictive options will probably not accomplish the goals of rehabilitation and protection of the public. The master's remarks at J.T.S.'s disposition hearing do not contain such an analysis. While the master refers to an analysis purportedly done by the Department of Health and Social Services, the pre-disposition report filed by the Department contains no such analysis either.

■ We have previously held that a minor's history of failed placements and continued violations of law can provide an adequate basis for the superior court's decision to institutionalize the minor. *See P.R.J. v. State*, 787 P.2d 123 (Alaska App. 1990). However, this decision must still be made after careful consideration of the alternatives. Given the terseness of the master's remarks, the failure of the pre-disposition report to analyze placement alternatives, the fact that, just before J.T.S.'s most recent offenses, the McLaughlin staff felt that J.T.S. was ready to be released on probation, and the fact that the last psychological evaluation of J.T.S. found in the record is two years old, we agree with J.T.S. that more explicit consideration of placement alternatives was required before the court sent him back to McLaughlin.

The placement order of the superior court is VACATED and this case is REMANDED for further proceedings.

